Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JENNIFER CHAITIN<br>**Apelada**<br><br>V.<br><br>ROBERT STAUDINGER<br>**Apelante** | TA2025AP00116 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil. Núm. CA2022CV02525<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Hernández Sánchez, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 10 de diciembre de 2025.

El 11 de julio de 2025, el Sr. Robert Staudinger, la Sra. María Chévere y la Sociedad Legal de Gananciales compuesta por ambos (esposos Staudinger-Chévere o la parte apelante) comparecieron ante nos mediante *Apelación* y solicitaron la revisión de una *Sentencia* que se emitió el 30 de abril de 2025 y se notificó el 2 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Demanda* presentada por la Sra. Jennifer Chaitin (señora Chaitin o la apelada). En consecuencia, ordenó a la parte apelante la devolución de $175,000.00 que recibieron como depósito en el otorgamiento del contrato de opción de compraventa. A su vez, le condenó al pago de $10,000.00 en honorarios de abogados por temeridad.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 8 de agosto de 2022, la señora Chaitin presentó una *Demanda* sobre incumplimiento de contrato en contra de la parte apelante, el Sr.

Michael Bahr[1], aseguradoras y otros.[2] Alegó que, el 14 de septiembre de 2021, otorgó un contrato de opción de compra con los esposos Staudinger-Chévere mediante el cual acordaron la compraventa de una propiedad inmueble ubicada en Carolina, Puerto Rico. Sostuvo que dicha propiedad se utilizaba para el negocio de alquiler a corto plazo o *AirBnB*, por lo que su intención era continuar con dicho negocio y expandir la propiedad. Indicó que, el precio total pactado fue de $1,620,000.00, $50,000.00 en mobiliario y $9,000.00 en reservaciones al momento del cierre. Además, esbozó que entregó un depósito de $175,000.00 el cual era aplicable al precio final.

Sin embargo, sostuvo que, previo a finalizar la compraventa de la propiedad, realizó un estudio de título con el propósito de revisar el estatus legal de la propiedad. Adujo que, dicho estudio reflejó que, la propiedad tenía una condición restrictiva la cual disponía que, únicamente podían construir una sola casa para residencia de familia, por lo que no estaba permitido establecer un negocio. Ante esta situación, manifestó que se comunicó con la parte apelante y notificó que la propiedad estaba en violación de las condiciones restrictivas. Esgrimió que, le propuso a la parte apelante realizar las gestiones necesarias a los fines de eliminar dichas condiciones restrictivas. No obstante, indicó que estos se negaron a colaborar e insistieron en continuar con la compraventa, actuando de mala fe.

Alegó que, el 24 de noviembre de 2021, le remitió una carta a la parte apelante con el propósito de solucionar el problema, o en la alternativa, solicitar la resolución del contrato y la devolución de los $175,000.00. No obstante, planteó que, la parte apelante se negó a negociar y/o devolver el depósito de los $175,000.00. En virtud de lo anterior, solicitó al TPI la devolución del depósito de $175,000.00 y la imposición de costas, gastos y honorarios de abogado.

---

[1] El 28 de febrero de 2025, la señora Chaitin desistió con perjuicio de la causa de acción instada en contra del Sr. Michael Bahr, corredor de bienes raíces. *Véase*, Entrada Núm. 147, *Sentencia Parcial* del apéndice del recurso, SUMAC TA.

[2] *Véase*, Entrada Núm. 1 del apéndice del recurso, SUMAC TA.

Tras varios trámites procesales, el 12 de mayo de 2023, los esposos Staudinger-Chévere presentaron su *Contestación a la Demanda* en la cual negaron la mayoría de las alegaciones.[3] Como defensas afirmativas, argumentaron que, las condiciones restrictivas no impedían la transferencia de títulos. Aclararon que, el inmueble en controversia estaba clasificado como RT-4 y, que dicha información le fue suministrada a la apelada mediante carta el 27 de enero de 2022. Sostuvieron que las rentas a corto plazo eran permitidas en propiedades con clasificación RT-4, por lo que la propiedad inmueble no tenía impedimento alguno para ser vendida. Por último, plantearon que la señora Chaitin incumplió con los términos y condiciones del contrato de opción, puesto que no contaba con los fondos económicos para comprar la propiedad inmueble y, no obtuvo financiamiento para la compra de esta. Resaltó que, a solicitud de la apelada, el contrato fue extendido en dos (2) ocasiones.

En la misma fecha, el TPI emitió una *Orden* advirtiéndole a las partes que tenían hasta el 30 de junio de 2023, para concluir el descubrimiento de prueba.[4] No obstante, el 28 de julio de 2023, el TPI emitió una *Orden* extendiendo el descubrimiento de prueba hasta el 15 de septiembre de 2023.[5] Además, ordenó a las partes a presentar el informe de conferencia con antelación a juicio no más tarde del 13 de octubre de 2023. Tras varias solicitudes de prórroga, el 4 de junio de 2024, el TPI emitió una *Orden* concediéndole a las partes hasta el 14 de junio de 2024, para presentar el informe de conferencia con antelación a juicio.[6]

Así las cosas, el 14 de junio de 2024, las partes presentaron su *Informe Sobre Conferencia Con Antelación a Juicio*.[7] Cónsono con lo anterior, el 30 de julio de 2024, el TPI emitió una *Orden* en la cual señaló la vista de conferencia con antelación a juicio para el 16 de

---

[3] *Véase*, Entrada Núm. 38 del apéndice del recurso, SUMAC TA.
[4] *Véase*, Entrada Núm. 39 del apéndice del recurso, SUMAC TA.
[5] *Véase*, Entrada Núm. 46 del apéndice del recurso, SUMAC TA.
[6] *Véase*, Entrada Núm. 96 del apéndice del recurso, SUMAC TA.
[7] *Véase*, Entrada Núm. 97 del apéndice del recurso, SUMAC TA.

agosto de 2024.[8] Luego, el TPI emitió una segunda *Orden* en la cual reseñaló la vista de conferencia con antelación a juicio para el 3 de septiembre de 2024.[9] Celebrada la vista, el 3 de septiembre de 2024, el TPI emitió una *Orden* mediante la cual transfirió la conferencia con antelación a juicio para el 23 de septiembre de 2024.[10] En síntesis, manifestó que, tenía dudas con relación al *Informe*, toda vez que las partes no realizaron determinaciones de hechos por estipulación. Por ello, ordenó lo siguiente:

- Transfiere la celebración de la Conferencia con Antelación a Juicio para el 23 de septiembre de 2024 a la 1:30 p.m.

- Ordena a las partes revisar concienzudamente el informe de conferencia con antelación al juicio. Deberán revisar los derechos aplicables en este caso y analizar bien las posturas sobre las controversias de los alquileres a corto plazo. Igualmente, analizar el contrato que es una obligación recíproca bilateral. Lo que implica que el incumplimiento de una parte exime a la otra del cumplimiento de sus respectivas obligaciones contractuales.

- Los abogados han coordinado reunirse el 19 de septiembre de 2024 a las 2:00 p.m., para discutir y finiquitar asuntos relacionados con el informe de conferencia con antelación a juicio.

- El informe enmendado deberá estar presentado dos días antes de la fecha de la conferencia con antelación a juicio.

En cumplimiento con lo anterior, el 20 de septiembre de 2024, las partes presentaron su *Informe de Conferencia Con Antelación a Juicio* enmendado.[11] Particularmente, señalaron que la única controversia a ser resuelta era si a falta de pacto en contrario, el que un bien inmueble tuviese una condición restrictiva, era causa suficiente para cancelar un contrato entre las partes y ordenar la devolución del depósito, aun cuando la parte apelante conocía el propósito principal de la señora Chaitin. A su vez, estipularon los siguientes hechos:

Estipulaciones de hechos, documentos y asuntos sobre los cuales no exista controversia:

---

[8] *Véase*, Entrada Núm. 103 del apéndice del recurso, SUMAC TA.
[9] *Véase*, Entrada Núm. 109 del apéndice del recurso, SUMAC TA.
[10] *Véase*, Entrada Núm. 118 y 119 del apéndice del recurso, SUMAC TA.
[11] *Véase*, Entrada Núm. 124 del apéndice del recurso, SUMAC TA.

Estipulaciones propuestas por la parte demandante:

a. Las partes suscribieron un contrato de opción de compra el 14 de septiembre de 2021 para adquirir una propiedad sita en la calle Begonia número 15 en Isla Verde, Carolina, Puerto Rico, descrita en los hechos presentado por la parte demandante.

b. Que el propósito de la demandante era adquirir el inmueble motivo de la presente acción para explotarlo comercialmente y no para uso unifamiliar como establecía las condiciones restrictivas señaladas por el estudio de título que se realizó.

c. Se estipula el estudio de título realizado por la compañía Luis Reyes Vázquez, LLC y que le fue notificado a la representante legal de demandante el 26 de octubre de 2021, por el Lcdo. Ramon Bordelies, y que el mismo establecía las condiciones restrictivas que se han señalado.

d. Que la parte demandada retuvo y nunca devolvió el depósito de buena fe de $175,000.000 entregado por la demandante al contratar con los demandados.

e. Que la propiedad motivo del caso de autos fue vendida por los codemandados Staudinger y Chévere el 15 de noviembre de 2022, a otra persona natural o jurídica.

Documentos estipulados por las partes en cuanto a su admisibilidad, no el contenido.

1. Listing Agreement

2. Licencia de corredor de bienes raíces Michael G. Bahr

3. Fianza de corredor de bienes raíces.

4. Contrato de Opción de Compraventa suscrito por la demandante y por Robert Staudinger y María Chévere el 16 de septiembre de 2021.

5. Estudio de Título con fecha de 24 de septiembre de 2021.

6. Adendum suscrito entre la demandante y los codemandados Robert Staudinger y Maria Chévere el 5 de noviembre de 2021.

7. Carta emitida por Ethel Santisteban a la demandante con fecha de 24 de noviembre de 2021.

8. Correo electrónico del 11 de noviembre de 2021 enviado por la demandante solicitando que el cierre fuese para el 18 de noviembre de 2021.

9. Correo electrónico del 14 de noviembre de 2021 enviado por la demandante acordando esperar al cierre para notificarlo a los huéspedes.

10. Correo electrónico enviado por Michael Bahr el 18 de noviembre de 2021 informándole a todas las

partes incluyendo a la demandante, que el cierre se encontraba pautado para el 30 de noviembre de 2021.

11. Mensaje de texto del 6 de octubre de 2021 entre la demandante y Michael Bahr.

12. Mensaje de texto del 18 de octubre de 2021 entre la demandante y Michael Bahr.

13. Mensaje de texto del 20 de octubre de 2021 entre la demandante y Michael Bahr.

14. Carta emitida por la Lcda. Rivera con fecha de 16 de diciembre de 2021.

<u>Hechos estipulados por las partes:</u>

1. Que los esposos Staudinger-Chevere contrataron el 8 de junio de 2021 como corredor exclusivo a Michael G. Bahr para que vendiera la propiedad que ubica en Calle Begonia #15 en Carolina, Puerto Rico y se estipuló una comisión del 6% del total de la venta.

2. Que los esposos Staudinger-Chevere firmaron un contrato de opción con la señora Chaitin para la compra de la propiedad que mercadeaba el corredor Michael Bahr con fecha del 14 de septiembre de 2021.

3. La venta de la propiedad Begonia #15 era por la cantidad de $1,620,000.00, además de $50,000 por los muebles y $9,000 por las reservaciones de Airbnb hasta el día del cierre. De los $9,000 la demandante era responsable de $6,000.00 y la diferencia la aportaría el corredor de bienes raíces.

4. Que la demandante realizó un depósito de opción por la cantidad de $175,000.00 mediante cheque.

5. Que ese cheque de opción se depositó en la cuenta plica del corredor, Michael Bahr.

6. Que se realizó un estudio de título con fecha del 24 de septiembre de 2021.

7. La compraventa de la propiedad no se materializó entre las partes.

Según señalada, el 23 de septiembre de 2024, el Tribunal celebró la *Vista de Conferencia Con Antelación a Juicio*. De la *Minuta* surge que, el Tribunal aclaró que, la controversia que tenía que resolver, era si las condiciones restrictivas inscritas eran justa causa para que la señora Chaitin se retractará en la compra de la propiedad. A su vez, enfatizó que, de las alegaciones de la apelada no surgían argumentos para determinar que dichas condiciones restrictivas dejaron de ser efectivas

por cambios significativos en la zona. Sostuvo que el derecho sustantivo disponía que las condiciones restrictivas eran válidas mientras estuviesen inscritas en el Registro de la Propiedad y no fueran eliminadas. No obstante, la parte apelante, esbozó que, a pesar de que existían dichas condiciones restrictivas, la señora Chaitin no estaba impedida de adquirir el título, ni realizar la transacción de compraventa.

De otra parte, el Tribunal determinó que las partes estipularon la retención del depósito de la apelada y la confiscación de este por lo esposos Staudinger-Chévere. Finalmente, las partes comunicaron que estaban de acuerdo con estipular la extensión del contrato, los correos electrónicos y los mensajes de texto. En virtud de lo anterior, el Tribunal exhortó a las partes a que trataran de llegar a un acuerdo transaccional. En respuesta, la apelada mencionó que, cursó una oferta a la parte apelante. No obstante, la misma fue rechazada.

Posteriormente, el 7 de noviembre de 2024, el TPI emitió una *Orden* concediéndole a las partes el término de diez (10) días para presentar un segundo informe enmendado.[12] Conforme ordenado, el 18 de noviembre de 2024, las partes presentaron su *Informe de Conferencia Con Antelación a Juicio* enmendado.[13] En esencia, reiteraron su estipulación con relación a la controversia. Con relación a los hechos estipulados por las partes, añadieron lo siguiente:

8. El Lcdo. Kendall E. Krans Negrón, representante legal de los codemandados Robert Staudinger y María Chévere, envió carta con fecha de 8 de febrero de 2022 a la Lcda. Gloria Rivera Carrero notificando que, conforme a los términos y condiciones del Contrato de Opción a Compra, instruyó a sus clientes a confiscar el depósito de $175,000.00. Esta comunicación fue notificada al Sr. Michael Bahr mediante correo electrónico enviado por Robert Staudinger.

9. Los codemandados Robert Staudinger y Michael Bahr acordaron el pago de un "service fee" al Sr. Bahr ascendente a $15,000.00 como parte de los servicios prestados como corredor de bienes raíces sobre el inmueble que ubica en #15 Begonia St. Isla Verde Carolina, Puerto Rico.

---

[12] *Véase*, Entrada Núm. 134 del apéndice del recurso, SUMAC TA.
[13] *Véase*, Entrada Núm. 135 del apéndice del recurso, SUMAC TA.

10. El Sr. Michael Bahr entregó el depósito confiscado al Sr. Robert Staudinger mediante cheque número 2007 con fecha de 25 de abril de 2022, según solicitado por el Lcdo. Kendall E. Krans Negrón. La cuantía de dicho cheque ascendía a $160,000.00. Dicha cuantía correspondía a los $175,000.00 del depósito confiscado por los vendedores Robert Staudinger y María Chévere, menos los $15,000.00 acordados por los servicios de corredor de bienes raíces.

Así las cosas, el 22 de noviembre de 2024, el TPI emitió una *Orden de Señalamiento y Manejo de Vista en su Fondo Mediante Videoconferencia* en la cual señaló la celebración del juicio para el 28 de noviembre de 2025 mediante videoconferencia.[14] Según señalado, el 28 de febrero de 2025, se celebró el juicio en su fondo.[15] En primer lugar, el TPI determinó que el primer remedio solicitado por la apelada era la devolución del depósito de $175,000.00 y el segundo remedio era la imposición de honorarios de abogado. Durante la vista, la apelada presentó como testigo a la Lcda. Ethel Santisteban Rivera y a la señora Chaitin. Mientras que, la parte apelante, presentó el testimonio del señor Staudinger. A su vez, señaló la continuación del juicio para el 31 de marzo de 2025. Según acordado, el 31 de marzo de 2025, se llevó a cabo la continuación del juicio en su fondo.[16] Allí, la apelada presentó como su segundo testigo al señor Bahr. Una vez concluido dicho testimonio, el Tribunal hizo constar que el caso estaba sometido para su disposición. Finalmente, exhortó nuevamente a las partes a llegar a un acuerdo transaccional.

Celebrado el juicio en su fondo, el 30 de abril de 2025, el TPI emitió su *Sentencia* que se notificó el 2 de mayo de 2025 en la cual declaró Ha Lugar la *Demanda* de epígrafe ordenándole a la parte apelante a devolver los $175,000.00 que recibió como depósito en el otorgamiento del contrato de opción de compra. Además, condenó a dicha parte al pago de $10,000 en honorarios de abogado por haber sido temerarios en el litigio del pleito. Advirtió que, de conformidad con la Regla 44.3 de Procedimiento Civil, *supra*, la *Sentencia* devengaba

---

[14] *Véase*, Entrada Núm. 136 y 137 del apéndice del recurso, SUMAC TA.
[15] *Véase*, Entrada Núm. 148 del apéndice del recurso, SUMAC TA.
[16] *Véase*, Entrada Núm. 149 del apéndice del recurso, SUMAC TA.

interés legal al 8.75% a computarse sobre la cuantía desde la fecha en que se dictó y hasta que la misma fuera satisfecha.[17] En primer lugar, determinó lo siguiente:

> Las partes estipularon en la conferencia con antelación a juicio los siguientes documentos:
>
> Exhibit I Listing Agreement
>
> Exhibit II copia de la licencia de corredor de bienes raíces de Michael Bahr
>
> Exhibit III fianza de corredor de bienes raíces
>
> Exhibit IV contrato de opción de compraventa
>
> Exhibit V estudio de título fechado el 24 de septiembre de 2021
>
> Exhibit VI Addendum de 5 de noviembre de 2021
>
> Exhibit VII carta de Ethel Santisteban dirigida a la demandante de 24 de noviembre de 2021
>
> Exhibit VIII correo electrónico enviado por la demandante el 11 de noviembre de 2021
>
> Exhibit IX correo electrónico enviado por la demandante el 14 de noviembre de 2021
>
> Exhibit X correo electrónico enviado por Michael Bahr el 18 de noviembre de 2021
>
> Exhibit XI mensaje de texto entre la demandante y Michael Bahr de 6 de octubre de 2021
>
> Exhibit XII mensaje de texto entre la demandante y Michael Bahr de 18 de octubre de 2021
>
> Exhibit XIII mensaje de texto entre la demandante y Michael Bahr de 20 de octubre de 2021
>
> Exhibit XIV carta preparada por la Lcda. Rivera de 16 de diciembre de 2021
>
> También se admitieron como prueba de la demandante los siguientes documentos:
>
> Exhibit 1 correo electrónico de 27 de octubre de 2021 que Ethel Santisteban envió a Ramón Bordelies (3 folios)
>
> Exhibit 2 correo electrónico de 28 de octubre de 2021 que Ethel Santisteban envió a Ramón Bordelies (1 folio)
>
> Exhibit 3 cadena de correos electrónicos intercambiados entre el 1 y el 4 de noviembre de 2021 por Bahr, Ethel Santisteban, Ramón Bordelies, Staudinger y Chaitin (3 folios)

---

[17] *Véase*, Entrada Núm. 150 del apéndice del recurso, SUMAC TA.

Exhibit 4 Carta de 24 de noviembre de 2021 enviada por la Lcda. Ethel Santisteban al Lcdo. Ramón Bordelies (2 folios)

Exhibit 5 cadena de correos electrónicos intercambiados entre el 39 y el 30 de noviembre de 2021 por Ethel Santisteban, Bahr, Ramón Bordelies, Staudinger y Chaitin

En vista de lo anterior, el TPI realizó las siguientes determinaciones de hechos:

1. El 14 de septiembre de 2021 las partes otorgaron un contrato de opción para la compraventa de un inmueble sito en la calle Begonia 15 de Isla Verde en el Municipio Autónomo de Carolina. (Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

2. El precio de venta del inmueble se pactó en $1,620,000. Las partes también acordaron la compraventa del mobiliario del inmueble por $50,000 y las reservaciones de los huéspedes que estuviesen vigentes al otorgar el contrato ("bookings on record as of closing") por $9,000. (Véase cláusula 2 del contrato a la página 1 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

3. Al firmar el contrato, la demandante entregó $175,000 al codemandado Michael Bahr como depósito ("earnest money") los cuales serían descontados del precio de venta. De acuerdo con la cláusula 3 del contrato, los demandados tendrían el derecho a retener para sí dicho depósito si la demandante se rehusaba o era incapaz de completar la compraventa en los términos el contrato ("Should the Buyer refuse to, or be unable to, conclude the sale on the above terms, the earnest money shall be forfeited…". (Véase cláusula 3 del contrato a la página 2 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

4. La cláusula 3 del contrato también dispone que, si los demandados no otorgaban la escritura de compraventa estando la demandante lista, dispuesta y apta para hacerlo, ésta tendría el derecho de exigir el cumplimiento específico del contrato o resolverlo y recibir devuelto el depósito pagado. ("If buyer is ready, willing and able to execute the sales deed and other closing documents, but if Seller does not execute the deed of sale, Buyer shall have the right to specific performance of this contract, and at their option, may cancel this contract and receive the earnest money in total.") (Véase cláusula 3 del contrato a la página 2 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

5. El contrato establece que el inmueble se transferiría a la demandante libre de gravámenes y que los demandados serían los responsables de cancelar a su costo cualquier gravamen al que estuviera afecto. ("The property Will be free and clear of any liens such as back taxes, mortgages, or any other debt relative to the

property upon transfer of ownership. THE Seller will transfer good, legal, insurable and recordable and marketable title to the property. All costs and expenses relating to the cancellation of any and all liens encumbering the property shall be borne by the Seller.¨) (Véase cláusula 5 del contrato a la página 2 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

6. La demandante tenía 45 días contados a partir del otorgamiento del contrato para ejercer la opción de compraventa del inmueble, plazo que por justa causa y por acuerdo de las partes podía extenderse 30 días adicionales. (¨THE SELLER conveys to THE BUYER the right to execute an option to purchase the subject property for the term of Forty-Five (45) days after both parties have placed their signatures on this Agreement. An Additional Thirty (30) day term may be granted if the stipulated term expire for valid reasons, upon agreement of both the Seller and the Buyer. ¨) (Véase cláusula 7 del contrato a la página 3 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.) Es decir, la demandante tenía para ejercer su derecho de opción hasta el viernes, 29 de octubre de 2021, plazo que por justa causa y por acuerdo de las partes podía prorrogarse hasta el lunes, 29 de noviembre del mismo año.

7. Por otra parte, la cláusula 9 del contrato dispone que los demandados también tienen derecho a retener para sí el depósito (earnest money) realizado si la compraventa del inmueble no se formaliza en el plazo convenido por razones atribuibles a la demandante. (¨If the transaction is not completed within the term of this contract for reasons attributable to THE BUYER, the Buyer agrees to forfeit the money given as an option. ¨) (Véase cláusula 9 del contrato a la página 4 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

8. Las partes acordaron que la compraventa se realizaría en metálico. (¨All the parties agree that the Sale will be a cash transaction. ¨) (Véase cláusula 10 del contrato a la página 4 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

9. Las partes reconocieron en el contrato de compraventa que el codemandado Michael Bahr sería el intermediario entre ellas y que no sería responsable por el incumplimiento del contrato que alguna de ellas pudiera incurrir. (¨THE SELLER and THE BUYER acknowledge that THE BROKER Michael Bahr Ortiz...will act as intermediary and is not responsible for the breach of this Agreement by any of the parts subscribing this binding Option to Purchase Agreement...¨) (Véase el segundo párrafo de la cláusula 13 del contrato a la página 5 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

10. La cláusula 13 del contrato requiere que las partes actúen con buena fe al intentar cumplir sus términos y condiciones y que el no hacerlo podría considerarse un incumplimiento de éste. (¨Buyer and Seller

acknowledge that they are required to make a good faith effort to satisfy all terms of the Agreement and that a failure to do so may be deemed a breach of the Agreement. ¨) (Véase el cuarto párrafo de la cláusula 13 del contrato a la página 5 del Anejo 1 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

11. El inmueble objeto del contrato está gravado o sujeto a condiciones restrictivas que lo destinan exclusivamente al uso residencial. (Véase el Anejo 5 a la solicitud de sentencia sumaria parcial, entrada 114 en el expediente.)

12. La demandante supo que el inmueble estaba sujeto a condiciones restrictivas cuando examinó un estudio de título que el 24 de septiembre de 2021 preparó la empresa Luis Reyes Vázquez, L.L.C., el cual discutió con su abogada Ethel M. Santisteban. (Véase párrafo 14 en la página 3 de la Réplica a moción de sentencia sumaria presentada por la demandante a la entrada 106 en el expediente.)

13. El 6 de octubre de 2021 la demandante informó por mensaje de texto al codemandado Michael Bahr que se encontraba esperando vender una de sus propiedades en el estado de Nueva York. ("I am still waiting on the closing of my properties in NY. I am hopeful that closing will happen next week, The other might be the 1st week in November. Let me check". (Véase la página 2 del Anejo 8 a la solicitud de sentencia sumaria, entrada 114 del expediente.)

14. El 18 de octubre de 2021 la demandante envió el siguiente mensaje de texto al codemandado Michael Bahr sobre la transacción de Nueva York: "I do not think we need to do the walk through tomorrow. The 24th does not seem likely. I am pushing very hard on my NY sale. The attorney on the other side is not responding. This is stressing me out." (Véase el Anejo 9 a la solicitud de sentencia sumaria, entrada 114 del expediente.)

15. El 20 de octubre de 2021 la demandante le envió el siguiente mensaje de texto al codemandado Michael Bahr sobre sus propiedades en Nueva York: "It looks like my closing in NY will be Monday or Tuesday. Once I have confirmed I will let you know" Véase el Anejo 10 a la solicitud de sentencia sumaria, entrada 114 en el expediente.)

16. El 11 de noviembre de 2021 las partes extendieron el plazo para ejercer la opción de compraventa hasta el día 30 de ese mes. (Véase el Anejo 6 a la solicitud de sentencia sumaria, entrada 114 en el expediente.)

17. El 11 de noviembre de 2021 la demandante solicitó que la formalización de la compraventa y el cierre de la transacción se coordinara para el día 18 de ese mes. (Véase el Anejo 11 a la solicitud de sentencia sumaria, entrada 114 en el expediente.

18. El 18 de noviembre de 2021 el codemandado Michael Bahr envió a los demandados mensaje por correo

electrónico a las partes convocando el cierre de la compraventa para el 30 de noviembre de 2021. (Véase el Anejo 13 a la solicitud de sentencia sumaria, entrada 114 en el expediente.)

19. El 24 de noviembre de 2021 la Lcda. Ethel M. Santisteban envió a la demandante una opinión legal sobre la compraventa en controversia. En ella la Lcda. Santisteban expresó:

> "For the past months, I have been assisting you with all the legal issues that have arisen in managing your option to buy agreement, hereinafter the "Agreement", regarding the purchase of the property located in Begonia#15 in Carolina, hereinafter "the property", always protecting your best interest, intentions, and investment in purchasing the property in question.
>
> During this ongoing negotiation process, I have talked with the realtor Michal Bahr, known as Michael Realty, hereinafter "the Realtor", the seller's attorney Lcdo. Ramón Bordelies, hereinafter, the Sellers attorney, the property manager Lcdo. Nino Martínez and communicated via email with all parties involved including the Sellers on your behalf as per your request. At all times, I have kept you informed and updated of all issues that have happened and assessed all possible options for you to purchase the properly with minimum risks to your investment and to preserve your intention of buying an income property to build a second floor, expand the existing multi family unit into five separate apartments and to continue with the operating income property in order for you to make an informed decision with all facts in place.
>
> As you are aware, the moment I received from the Sellers attorney the draft deed, and the complementary documents, especially the title search, I immediately highlighted the concerns of the severe restrictive conditions existing upon the property that you were not aware of and/or notified at any moment during the initial negotiations despite the fact that such conditions are on the Sellers deed and the Realtor and Sellers knew of your intentions towards buying the property.
>
> On October 27, 2021, I sent an email to the Sellers attorney stressing the importance and the concerns regarding the existing restrictive conditions. In addition, I requested some specific documentation, some of which the produced like evidence of paying the Room tax as required by Tourism Company and others they have not like the building permits used to expand the single residence into a multi-unit family and the authorization to operate a business on the property in compliance with the existing zoning requirements.
> We went back and forth between the parties, meaning the Realtor, the sellers attorney and myself since the option to buy agreement was expiring on October 31, 2021. On the last date to sign the extension of the agreement, after discussing with

the Realtor, the specific concern regarding the existing restrictive conditions, I proposed an additional language, which was accepted by the Realtor, and it is as follows: **"Subject to the resolution and clarification of the current restrictive conditions of Building and Use that are imposed on the property as per title search performed by Luis Reyes Vázquez, LLC on September 24, 2021"**.

Subsequently, on that same day, you signed the extension with the added language within the valid period to extend the option to buy agreement and sent to the Realtor for the Sellers to sign it.

Afterward, we were informed through the Realtor and sellers attorney that the Sellers refused to sign the added language regarding restrictive conditions. Despite this fact, we continued negotiating in good faith with the Sellers attorney and Realtor due to your interest in the property and because the Realtor advised us that original option agreement has language regarding the transfer of a clean title, and he acknowledged that restrictive conditions mean that there are problems with the title, since it is encumbered and not free. Therefore, days later and again acting in good faith, you proceeded to sign the extension of the option to buy agreement without the proposed additional language, since this was the only way that the Sellers will sign the extension to the Agreement until November 30, 2021.

An investigation was done by the sellers attorney who visited the Property Registry and inquired about the existing restrictive upon the property. I also did my own research. The restrictive conditions are dated from the 1950s and have no expiration date, therefore, it means that they are there indefinitely affecting present and future owners of the property. At the same time unless someone presents a claim or a lawsuit those restrictive conditions are not going to be removed. The Property Register of Carolina informed the sellers attorney through their supervisor Katherine that the restrictive conditions will not be cancelled unless a sentence from the court was presented ordering them to do so.

Due to your interest in the property, we continued moving forward with the transaction despite the lingering concerns regarding the restrictive conditions.

Notwithstanding all aforementioned statements, it has come to light a new case from the Supreme Court of Puerto Rico, titled **José Fernández Martínez, María Bernal Echeandía by itself and on behalf of the Sociedad Legal de Gananciales; Recreational Association of Residents of the Santa María Urbanization, Inc.; UNDARE, Inc. Petitioners v. RAD-MAN San Juan III-D, LLC.; BETA OMICRON, ZETA Certiorari 2021 TSPR 149 dated November 17, 2021, hereinafter the "Case",** that sheds new rulings validated old one,

which specifically address your present situation and ratifies and confirms our initial position regarding the restrictions on the property and the need to have a clean title free of any encumbrances, which clearly impact your intent and reasons of purchasing the investment/income property.

Therefore, it is my responsibility to advise you of the Case, which is attached here to for you to read it, the translated content is not an official translation. There are many similarities between the case and your present situation which raise mor red flags.

Below, I will summarize and highlight some of the quotes from the Case that affect your current situation which clearly impact your intention and use for the property in question.

Details and quotes of the Case will be *in italic and underlined* and how the relate to your circumstances surrounding the purchase of the property in question and the existence of the restrictive conditions will be bold next to it.

Case: ***José Fernández Martínez, María Bernal Echeandía by itself and on behalf of the Sociedad Legal de Gananciales; Recreational Association of Residents of the Santa María Urbanization, Inc.; UNDARE, Inc. Petitioners v. RAD-MAN San Juan III-D, LLC.; BETA OMICRON, ZETA Certiorari 2021 TSPR 149 dated November 17, 2021***.

Subject: ***Real rights: Easements in equity: conditions or restrictions that limit the use of certain land and the means of which charges or encumbrances are imposed that bind present and future acquirers.***

1. *In this regard, the plaintiffs alleged in their application that RadMan used their proper in contravention of the aforementioned restrictive conditions, since he divided it into several short-term rental apartments, thus converting it into a commercially multi-family property. They also argued that Rad-Man operated a rental business without the corresponding permit to use the Municipality of San Juan, in violation of the Territorial Planning Regulations of the Municipality of San Juan, Ordinance No. 73, Series 2001-02 of February 26, 2002.* **Currently, the property is a multi-unit and is being rented out as an Airbnb property, short term rental, instead of a single unit family home for sole purpose of residential in clear violation of the restrictive conditions. Moreover, the Sellers and Realtor are fully aware since the beginning of negotiating the Agreement of your intentions regarding the purchase of the property. The parties know**

**that your intention of choosing that property was clearly to use it as a rental property with multiple apartments, that you want to build a second floor of the property and remodel the existing layout in order to have five individual entrances to rent it our as five separate apartments.**

2. _Rad-Man´s property was subject to the restrictive conditions that prevented the Commercial and multifamily use of it._ **There are the restrictive conditions encumbering the property:**

   **RESTRICTIVE CONDITIONS: Building and Use. The Buyer, her heirs or successors, may only build on the acquired plot a single house for family residence and a distance of not less than 2 meters away from the front of the plot. That on the site may not be built ranches, public garage, park or store motor vehicles, or establish business of any kind other than the construction of a house for family residence. The extraction of sand for commercial purposes or outside the alienated plot will not be allowed unless the extraction of such sand is for th construction of the houses on the plots comprising the plot.**

3. _As is known, easements in equity, -- a legal figure that we adopt from common law --, are those conditions or restrictions that limit the use of certain lands and through which charges or encumbrances are imposed that bind present and future acquirers._ **As a potential future Owner, the mere existence of these conditions are clearly limiting what you can do in the property if you purchase it now and if in the future you want to sell it since the conditions will always be present unless eliminated via a court order and a proper study and evaluation of the circumstances of your situation is performed in accordance with the case ruling, which clearly details all steps needed to be complied with in order to eliminate the restrictive conditions. Specially, since the Sellers and Realtor are fully aware since the beginning of negotiating the Agreement of your intentions regarding the purchase of the property. The parties know that your intention of choosing that property was clearly to use it as a rental property with multiple apartments, that you want to build a second floor on the property and remodel the existing layout in order to have five individual entrances to rent it out as five separate apartments.**

4. _Also known as restrictive conditions, these limit the powers of a property subject to such encumbrances in terms of the construction of new works, the changes he can make to the works already done and the uses to which the property_

*can be destined.* **Please see bold answer on item 3 above.**

5. *Once registered easements in equity constitute opposable rights in rem erga owners. Asoc. Vec. Urb. Hyuke v. Bco. Santander, supra,p. 535, Asoc. V. Villa Caparra v. Catholic Chrch, 117 DPR 346,353 (1986). This means that knowledge of the limitations and conditions imposed by virtue of them is imputed to all present and future acquirers of the property that they encumber.* **Please see bold abswer on item 3 above.**

6. *Thus, "[w]hen a person has full knowledge of the limitations of use of a property, he should never be allowed to carry out the conduct or action prohibited by such restrictions. "Asoc. Vec. Urb. Hyuke v. Bco. Santander, supra, p. 536.*

7. *In that direction, easements in equity are considered as a contract of a real nature, either because the parties agree to encumber their property to limit its use or because – knowing the restrictions registered in the Land Registry – they acquire the encumbered property, thus agreeing to submit to them.* **It is clear that your intention is not to submit to these restrictions which clearly jeopardize your intentions, investment and livelihood.**

8. *To give effect to their rights and prevent violations of the limitations imposed, the owners of properties subject to easements in equity have available the resourse of injunction.* **The possibility of an injunction is a real threat, that can be filed by an interest party, Present or Future, at any given moment, the risk of purchasing the property to continue with the existing business and to make your desired changes to the property to maximize your investment to be interrupted by an injunction is real.**

9. *Established the above, and because it is a legal figure that is governed by the principles of equity of the common law, easements in equity can be modified or extinguished in several scenarios, namely: 1) by agreement of the interested parties, either by total or partial termination of the restrictive clauses or by the constitution of new restrictions that alter the previous ones; 2) by the effect of time or by the condition being performed, if the restrictions have been constituted on a term or conditional basis; 3) for the gathering in the same person the property of all the servant and dominant properties (confusion); 4) by compulsory expropriation of the servant property if the encumbrances in equity are incompatible with the public use of the expropriated property; 5) by resignation or abandonment of the owners who receive the benefits of servitude, by conduct that demonstrates a conclusive intention to renounce or abandon them; and 6) when radical changes of*

*the neighborhood not only make the restriction unreasonable and oppressive for the owner of the servant property, but also destroy the value that the restriction had for the owner of the dominant property, so it is impossible to achieve the ends pursued by the easement.* **The case ratifies and clearly states the conditions and requirements, which need to be met in order for the restrictive conditions to be cancelled. This is why we originally asked for the Sellers to do this study and follow the roadmap dictated by court and transfer to us a title free of encumbrances, and they refused to do so and insisted that you needed to proceed any legal matter necessary to cancel the restrictions and all costs will be covered by you.**

10. *In this direction so that changes in the neighborhood can cause the modification or extinction of an easement in equity; our legal system requires that they be of a radical and permanent nature, in such a way that they substantially prevent the achievement of the advantages and benefits established in favor of the dominant properties.* **Until the proper study is performed and the facts are presented to the court, and the court issues a judgement, we will never be in a proper position to assess and know if the property meets the defined legal criteria to eliminate the existing conditions.**

11. *It is not enough for a part of that area, located on the edge or shores of the district that is not subject to the restrictions, to suffer the impact of the aforementioned changes, if there are plots or interior portions of the restricted area that can still receive the advantages and benefits established in their favor through easement in equity. (Emphasis supplied). Id.* Please see bold answer on item 10 above.

12. *It is obvious [then] that to eliminate easements in equity for reasons of radical changes it is not enough to prove those that occurred in the adjoining neighborhood or peripheries. The radical change must have occurred in the properties affected by the restrictions and, in addition, in a significant majority of them.* **Please see bold answer on item 10 above.**

13. *In accordance with the foregoing, we resolve that, in the present case, the occurrence of radical changes that have modified or extinguished the easements in equity here in dispute was not demonstrated. Let us remember that if the encumbered area has not deteriorated, we should not ordinarily set aside a restriction because changes have occurred in the periphery. Consequently, we have an obligation to preserve the autonomy of the will of the contracting parties and to prevent restrictions from being*

*extinguished through a gradual process of abrogation that begins with the plots at the edge of the restricted area and extends – step by step – to the portions or plots located in the center of the restricted land. The aforementioned errors were therefore committed.* **Please see bold answer on item 10 above.**

14. On the grounds set our above, the Judgment of the Court of Appeal is revoked and the Judgment delivered by the Court of First Instance is reinstated in its entirety. A judgment of conformity shall be rendered. **The ruling in this case was against the defendant, who bought a property and divided into six individual apartments to rent it out as a short term rental and he was stopped by and injunction an ordered to seize the operation of his business because it was in clear violation of the restrictive conditions, these facts are very similar to your situation since it limited the use to a single and residential family unit only like the existing restrictive condition of use and building in the property in question.**

Based on all the aforementioned details and given the fact that the court continues to validate the existence of restrictive conditions on a case with facts so similar to yours, my legal opinion and recommendation is to not proceed with the purchase of the property unless the sellers can provide you a title free of any encumbrances.

For your best interest, it is my duty to recommend you to please read this letter carefully and if in agreement reply to me in writing authorizing me to proceed as follows:

1. To send a letter today to the sellers attorney and the realtor immediately notifying them of our intention to reiterate our initial position presented regarding our valid concerns of the restrictive conditions and ask them to provide us a clean title free of encumbrances, especially in light of the new ruling on the case, which clearly shows how the purchase of the property with the existing risk of the restrictive conditions defeats the purpose and intention of why you are acquiring the property, I will give them two options.

2. **Option #1:** Will request them to extend the contract until the existing title can be free of any encumbrances and that a study has to be made and present a case to the court to verity if the property meets all criteria previously defined by the court to eliminate the conditions. We are willing to participate in this process as an interest party.

3. **Option #2:** If they do not want to extend the contract until the restrictive conditions are

evaluated, assessed and resolved in the corresponding legal forum, then will ask to rescind the contract and for the option deposited money of $175,000 to be returned to you immediately since the contract terms cannot be fulfilled.

As, I stated above, please review this promptly and provide an answer in order for me to notify the parties immediately since we do we do not want to impact their ongoing business.

I also want to expressly state that since I do not know the result of requests to be made, and what subsequent negotiations will take place, that if for any reason they refused to cooperate with either given option the next step will be to go file a lawsuit in the corresponding forum.

As you know, I am not a litigating attorney and cannot represent you on any legal, civil and/or criminal, matter before any court. If after exhausting all the options and remedies, there is still a need to go to court to recover the money, I can recommend you attorney Gloria Rivera Carrero, who is aware of the circumstances and facts surrounding your case and is an experienced litigator attorney who can represent you well before the court. It is also your prerogative to select the counsel of your own choice.

I wish for a prompt and favorable resolution of this case and wish you a Happy Thanksgiving with your loved ones."

(Véase el Anejo 7 a la solicitud de sentencia sumaria, entrada 114 en el expediente.)

20. El balance inicial de la cuenta de inversiones de la demandante en Park West Securities para el período comprendido entre el 1 y el 31 de diciembre de 2021 era de $493,081.86.7 (Véase la página 5 del Anejo 3 a la solicitud de sentencia sumaria, entrada 114 en el expediente.)

Además, el TPI añadió los siguientes hechos que estipularon las partes en el Informe Preliminar entre abogados la conferencia con antelación a juicio:

21. Los esposos Staudinger-Chévere retuvieron o "confiscaron" el depósito de $175,000 que efectuó Chaitin. Véase la página 4 de la minuta correspondiente a la conferencia con antelación a juicio celebrada el 23 de septiembre de 2024 en la entrada 126 en el expediente judicial.

22. Bahr entregó a Staudinger el depósito efectuado por la demandante mediante cheque 2007 emitido el 25 de abril de 2022 por $160,000. Bahr retuvo $15,000 como comisión por los servicios prestados a los esposos Staudinger-Chévere. Véase la página 13 del Informe

preliminar entre abogados presentado en la entrada 135 del expediente judicial.

23. Los Staudinger-Chévere adquirieron el inmueble objeto de la demanda el 4 de enero de 2019. Véase Exhibit V por estipulación de las partes.

24. El inmueble estaba abandonado cuando los Staudinger-Chévere lo adquirieron de una institución bancaria.

25. Cuando los Staudinger-Chévere adquirieron el inmueble no se percataron o estuvieron conscientes ("unaware") que estaba gravado con condiciones restrictivas.

26. Los Staudinger-Chévere repararon o remodelaron el inmueble.

27. Los Staudinger-Chévere, a pesar de las condiciones restrictivas que gravan el inmueble, lo explotaron comercialmente arrendándolo a corto plazo. Los Staudinger-Chévere fueron exitosos en esa operación comercial.

28. La extensión del contrato acordada por las partes y formalizada en el Addendum no enmendó o modificó los términos del contrato de opción de compraventa existente entre las partes. Véase Exhibit VI por estipulación de las partes.

29. Chaitin tenía mucho interés en adquirir el inmueble para continuar dedicándolo a alquileres a corto plazo, tanto así, que en el contrato de compraventa se acordó que ella compraría a los Staudinger-Chévere las reservaciones existentes al momento en que se formalizara la compraventa del inmueble.

30. Chaitin tenía mucho interés en el inmueble porque quería añadirle un segundo piso y dividirlo en 5 apartamentos separados para ampliar la operación de alquileres a corto plazo.

31. Tan pronto Chaitin supo que el inmueble estaba gravado con condiciones restrictivas comenzó a negociar con los Staudinger-Chévere su eliminación o cancelación.

32. Chaitin incluso estuvo dispuesta a colaborar con los Staudinger -Chévere para cancelar las condiciones restrictivas que gravan el inmueble.

33. Los esposos Staudinger-Chévere no estuvieron dispuestos a procurar la eliminación o la cancelación de las condiciones restrictivas. Las únicas gestiones que ellos realizaron para atender la preocupación de Chaitin sobre las condiciones restrictivas fueron 2 visitas que el Lcdo. Bordelies realizó a la registradora de la propiedad inmueble para auscultar con ella alternativas para resolver dicho problema.

34. Chaitin estaba dispuesta a negociar una extensión adicional del contrato si los Staudinger-Chévere se

comprometían a gestionar la cancelación de las condiciones restrictivas.

35. El contrato entre las partes no exigía a Chaitin que probara tener el efectivo necesario para efectuar la compraventa. No obstante, durante las negociaciones que las partes realizaron después de otorgar el contrato, Bahr Ortiz solicitó varias veces a Chaitin que le demostrara que tenía el dinero en efectivo disponible. Chaitin no presentó prueba de ello.

36. Chaitin tenía disponible el dinero en efectivo para realizar la compraventa.

37. La única razón por la cual Chaitin decidió no formalizar la compraventa del inmueble fue que éste estaba gravado con condiciones restrictivas.

38. Staudinger nunca comprendió porque Chaitin quería sujetar la formalización de la compraventa a la eliminación de las condiciones restrictivas. Para él, la condición de Chaitin era irrazonable porque él, a pesar de las condiciones restrictivas, dedicó exitosamente el inmueble a los alquileres a corto plazo y nunca confrontó problemas por ello.

En vista de las determinaciones de hechos antes formuladas y la prueba presentada por las partes, el Tribunal entendió que, quedó demostrado que los esposos Staudinger-Chévere desde el otorgamiento del contrato de opción se obligaron a transmitir un título libre de cargas y gravámenes, contrayendo así la obligación de cancelar las condiciones restrictivas que lo gravaban. Sin embargo, no lo hicieron. Entiéndase, el Tribunal determinó que la parte apelante no realizó gestiones afirmativas con el propósito de modificar las condiciones restrictivas y llevar a cabo el contrato. Enfatizó que, la parte apelante se limitó a enviar al notario a que se entrevistara con el registrador de la propiedad inmobiliaria. Aun así, retuvieron el depósito que la señora Chaitin les entregó. Por otra parte, señaló que, aun cuando el contrato entre las partes no le exigía a la apelada probar que tenía el dinero en efectivo para realizar la compraventa, el tribunal creyó su testimonio de que tenía el dinero disponible.

Respecto a los honorarios, el TPI concluyó que la parte apelante fue temeraria al tramitar el pleito, por lo que procedía sancionar tal conducta. Sostuvo que los esposos Staudinger-Chévere conocían o debieron conocer desde el 2019 que el inmueble objeto del contrato

estaba gravado con restricciones de uso y de edificación. Por lo tanto, razonó que cuando estos otorgaron el contrato con la apelada, tenían conocimiento de que no podían cumplir su obligación de transmitir un título libre de cargas, a menos que cancelaran dicha servidumbre en equidad. Añadió que, la prueba estableció que la parte apelante no cooperó con la apelada para lograr que las restricciones fueran eliminadas y que aun sabiendo su imposibilidad de cumplir dicha obligación decidieron retener el depósito de $175,000.00 que les entregó la señora Chaitin.

Cónsono con lo anterior, resolvió que la conducta de la parte apelante era improcedente en una obligación recíproca. Es decir, si ellos no podían cumplir su obligación, estaban impedidos de exigirle a la señora Chaitin la contraprestación pactada, mucho menos negarse a devolverle el dinero depositado. En virtud de lo anterior, indicó que la parte apelante prefirió litigar el pleito por más de dos (2) años a sabiendas de que no tenían prueba ni fundamentos para refutar las alegaciones de la apelada, mucho menos para probar que habían cumplido las obligaciones que contrajeron en el contrato y que podían exigirle a la señora Chaitin su cumplimiento respectivo o la resolución del contrato.

En desacuerdo con la determinación del TPI, el 19 de mayo de 2025, la parte apelante presentó su *Reconsideración* en la cual reiteró sus argumentos iniciales.[18] Además, alegó que no estaban conscientes de la condición que gravaba la propiedad previa al otorgamiento del contrato, por lo que no actuaron con temeridad y malicia. Por otra parte, arguyó que la señora Chaitin incentivó la continuación de la transacción, solicitó la extensión y el cierre para fecha cierta y entabló discusiones sobre la entrega del negocio, ignorando el asunto de la condición restrictiva. Por ello, razonó que el Tribunal abusó de su discreción al no considerar toda la evidencia documental y testifical e

---

[18] *Véase*, Entrada Núm. 151 del apéndice del recurso, SUMAC TA.

imponerles toda responsabilidad, aun cuando la apelada conocía que no podía cumplir con su obligación.

En respuesta, el 10 de junio de 2025, la señora Chaitin presentó su *Réplica a Solicitud de Reconsideración*.[19] En síntesis, esbozó que, la parte apelante admitió que en el 2019 adquirió la propiedad mediante una transacción con el banco que había reposeído la misma, por lo que era lógico concluir que ante tal transacción hubo un estudio de título tal y como lo hubo en el caso de epígrafe. A su vez, manifestó que, luego de realizar el estudio de título, le solicitó a la parte apelante a que cumpliera con el contrato y, con ello, entregara la propiedad libre de gravámenes. Por otra parte, reiteró que, el contrato no requería demostrar la existencia de fondos al momento de la compraventa. Por último, argumentó que, el contrato era uno bilateral, por lo que ambas partes tenían que cumplir con su parte del contrato.

Examinada la moción de reconsideración y su oposición, el 11 de julio de 2025, el TPI emitió una *Resolución Interlocutoria* que se notificó al día siguiente declarando No Ha Lugar la *Reconsideración*.[20] Aún inconforme, el 11 de junio de 2025, la parte apelante presentó el recurso de epígrafe y señaló la comisión de los siguientes errores:

> **Erró el Tribunal de Primera Instancia al omitir y restarle peso e importancia a hechos materiales y esenciales, actuando con prejuicio, parcialidad, e incurriendo en craso abuso de discreción.**
>
> **Erró el Tribunal de Primera Instancia al atribuirle entera responsabilidad a los apelantes sin tomar en consideración las actuaciones de la demandante en contra de sus propios actos que contribuyeron al fracaso de la transacción y por ende procedía la retención del depósito de buena fe.**
>
> **Erró el Tribunal de Primera Instancia al dictar una sentencia inconsistente y contradictoria que no refleja la totalidad de la evidencia sometida.**
>
> **Erró el Tribunal de Primera Instancia al determinar que los apelantes no tenían evidencia alguna y con ello actuando de forma temeraria.**

---

[19] *Véase*, Entrada Núm. 153 del apéndice del recurso, SUMAC TA.
[20] *Véase* Entrada Núm. 154 del apéndice del recurso, SUMAC TA.

Atendido el recurso, el 15 de julio de 2025, emitimos una *Resolución* concediéndole a la parte apelada hasta el 11 de junio de 2025 para presentar su oposición. No obstante, el 21 de julio de 2025, los esposos Staudinger-Chévere presentaron una *Autorización Para Someter Regrabación de los Procedimientos*. Cónsono con lo anterior, dejamos sin efecto la *Resolución* del 15 de julio de 2025, ordenamos a la parte apelante a obtener la regrabación de los procedimientos y presentar la transcripción de la prueba oral estipulada en un plazo de treinta (20) días. Una vez presentada la prueba estipulada, concedimos a la apelada un plazo de veinte (20) días para presentar su alegato en oposición. Luego de solicitar varias prórrogas, el 14 de noviembre de 2025, la parte apelante presentó la transcripción de la prueba oral. Posteriormente, el 9 de diciembre de 2025, la parte apelada presentó su *Alegato de la Parte Apelada* y los esposos Staudinger-Chévere presentaron su *Alegato Suplementario*.

## II.

### -A-

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Mediante un contrato las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753. Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley entre las partes, sus sucesores y ante terceros en

la forma que dispone la ley. Art. 1233 del Código Civil 2020, 31 LPRA sec. 9754. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Consonó con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009). Así pues, en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes. Íd.

Ahora bien, en lo pertinente a la controversia ante nos, los contratos de opción, aunque no están reglamentados en nuestro Código Civil, sí ha sido reconocido jurisprudencialmente y nuestro más alto foro lo ha definido como sigue: "el convenio por el cual una parte (prominente) le concede a otra parte (optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 246 (2002). En otras palabras, este contrato es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compraventa. Ahora bien, los elementos esenciales de este contrato son: (1) se le concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (compraventa) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y, por último, (4) no existe otra

condición que no sea la voluntad del optante. *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001).

**-B-**

El Art. 813 del Código Civil 2020, 31 LPRA sec. 8081, define las restricciones voluntarias de carácter real como aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas y que cumplen con los requisitos dispuestos en el siguiente artículo. Es decir, las restricciones voluntarias son un contrato privado de naturaleza real, pues una vez inscrito, las condiciones impuestas en el referido contrato constituyen derechos reales oponibles *erga omnes*. *Ramírez Kurtz et als. v. SLG*, 214 DPR 986 (2024); *Asociación Playa Húcares v. Rodríguez,* 167 DPR 255, 264 (2006). Esto significa que, el conocimiento de las limitaciones y condiciones impuestas en virtud de las restricciones voluntarias se imputa a todo presente y futuro adquirente de la propiedad que éstas gravan. *SLG Fernández-Bernal v. RAD-MAN et. al*, 208 DPR 310, 327-328 (2021). Por lo que, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones". *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 536 (2002).

Por su parte, el Art. 818 del Código Civil 2020, 31 LPRA sec. 8086, enumera las razones para modificar o extinguir una restricción voluntaria. Estas son las siguientes:

(a) en la forma y por las causas dispuestas en el acto jurídico que las establece;

(b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteran las anteriores;

(c) por efecto del tiempo o por realizarse la condición, si así se constituyeron;

(d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos;

(e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y

(f) por cambios radicales del vecindario.

Respecto a los cambios radicales, el Tribunal Supremo de Puerto Rico ha señalado que el análisis a seguir es "si por razón de cambios radicales y permanentes en las condiciones de un vecindario, resulta prácticamente imposible realizar o lograr los fines que perseguía la [restricción voluntaria], entonces ésta queda modificada o extinguida". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, pág. 330; *BPPR v. Sucn. Talavera*, 174 DPR 686, 710 (2008). Así pues, el propietario o el titular de un derecho real que recae sobre una finca gravada con alguna restricción voluntaria, pueden solicitar al tribunal competente que declare su modificación o extinción, si se suscita alguno de los supuestos del Art. 818 del Código Civil de 2020, *supra*.

**-C-**

La buena fe debe permear todo el proceso de contratación desde sus fases iniciales durante la negociación del contrato y durante la fase de su cumplimiento. *Ortiz Brunet v. El Mundo*, 169 DPR 332, 340 (2006). Este principio impone deberes de conducta ajustados a la naturaleza de la relación jurídica y a la finalidad perseguida por las partes, entre ellos el deber de actuar con lealtad recíproca, honradez y fidelidad a la palabra dada. Íd. En la etapa previa a la perfección del contrato, la buena fe exige, además, la colaboración activa en la formación del acuerdo y la obligación de obtener y divulgar información relevante de hecho y de derecho. Art. 1271 del Código Civil de 2020, 31 LPRA sec. 9881. Supone también el guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella; conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. *Ortiz Brunet v. El Mundo*, supra, pág. 340.

**-D-**

Los tribunales están facultados a "resolver diligentemente los asuntos ante su consideración, ateniéndose al sistema de fuentes del ordenamiento jurídico establecido". Art. 6 del Código Civil de 2020, 31 LPRA sec. 5316. Consonó con lo anterior, mediante la jurisprudencia, nuestro más alto foro ha incorporado la doctrina de los actos propios. Particularmente, esta norma procura que las personas no vayan en contra de sus propios actos, y que actúen de buena fe en el ejercicio de sus derechos y en el cumplimiento de las obligaciones en las que incurran en variadas relaciones jurídicas. *Vivoni Farage v. Ortiz Carro*, 179 DPR 990,1010 (2010). Así pues, el propósito de esta doctrina es "proteger la confianza depositada en la apariencia, que es, por extensión, la protección de un interés social o la consecución de un ideal de justicia". *Aponte Valentín v. Pfizer Pharm.*, 208 DPR 263, 287 (2021). En vista de ello, el Tribunal Supremo ha sido enfático en establecer que la conducta contradictoria no tiene lugar en el campo del derecho y debe ser impedida. Íd.

La aplicación de la doctrina de actos propios está sujeta a la concurrencia de los siguientes elementos: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y, por último, (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. *Alonso Piñero v. UNDARE, Inc.*, 199 DPR 32, 55-56 (2017).

En fin, en virtud de la doctrina de actos propios, un litigante está impedido de adoptar una actitud que sea contradictoria con una conducta anterior, sobre la cual la parte perjudicada ha confiado, y ello sin importar la verdadera intención de la parte que genera esa confianza. *Pardo v. Sucn. Stella*, 145 DPR 816, 829 (1998).

**-E-**

La Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, establece que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...]". Lo anterior quiere decir que, si el tribunal sentenciador determina la existencia de temeridad, la imposición de honorarios es imperativa. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022).

En términos generales, la temeridad es aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 925 (2012). El propósito de la imposición de honorarios de abogado en casos de temeridad es penalizar a un litigante perdidoso que, por su "testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, los gastos e inconvenientes de un pleito". *SLG González-Figueroa v. SLG et al., supra*, pág. 149. Además, la imposición de temeridad tiene el propósito de disuadir la litigación frívola, compensar los gastos sufridos por la otra parte y alentar las transacciones de los pleitos. Id., pág. 147.

Según el Tribunal Supremo, existe temeridad en las siguientes instancias: 1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; 2) defenderse injustificadamente de la acción; 3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; 4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad y 5) negar un hecho que le conste es cierto a quien hace la alegación. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011). La

evaluación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y sólo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. *PR Fast Ferries et al. v. AAPP,* 213 DPR 103, 115 (2023).

Por el contrario, la temeridad es improcedente en aquellos litigios que contienen controversias complejas y novedosas aun no resueltas en nuestra jurisdicción o cuando la parte concernida responde a lo que resulta ser una apreciación errónea del derecho. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013).

III.

En el presente caso, los esposos Staudinger-Chévere impugnaron una *Sentencia* que el TPI emitió el 30 de abril de 2025 y notificó el 2 de mayo de 2025. Específicamente en su primer señalamiento de error, plantearon que el TPI erró al omitir y restarle peso e importancia a hechos materiales y esenciales, actuando con prejuicio, parcialidad, e incurriendo en craso abuso de discreción. Por otra parte, en su segundo señalamiento de error, argumentaron que el TPI incidió al atribuirle entera responsabilidad sin tomar en consideración las actuaciones de la apelada en contra de sus propios actos, lo que contribuyó al fracaso de la transacción. Por ello, procedía la retención del depósito de buena fe. En cuanto a su tercer señalamiento de error, sostuvieron que el TPI erró al dictar una sentencia inconsistente y contradictoria que no reflejaba la totalidad de la evidencia sometida. Por último, en su cuarto señalamiento de error, adujeron que el TPI incidió al determinar que no tenían evidencia alguna para probar sus alegaciones y, concluir que actuaron de forma temeraria.

Discutiremos el primer y tercer señalamiento de error en conjunto por estar estrechamente relacionados entre sí. En la sentencia apelada, el TPI resolvió con lugar la *Demanda* presentada y ordenó a la parte apelante la devolución de la suma de $175,000.00 que había recibido como depósito en virtud del contrato de opción de

compraventa. El TPI fundamentó su decisión en que se probó que, desde el otorgamiento del contrato, los esposos Staudinger Chévere asumieron la obligación de entregar un título de propiedad libre de cargas y gravámenes, lo que incluía cancelar las condiciones restrictivas existentes. No obstante, incumplieron con dicha obligación, ya que no realizaron gestiones concretas para modificar dichas condiciones ni para dar cumplimiento al contrato. El tribunal destacó que la única acción tomada por la parte apelante fue enviar al notario a entrevistarse con el registrador de la propiedad, lo cual resultó insuficiente. Pese a ello, retuvieron el depósito entregado por la señora Chaitin. Ante esta conducta, el tribunal concluyó que los apelantes actuaron en contravención de los principios que rigen las obligaciones recíprocas, pues al no poder cumplir con su parte del acuerdo, no podían exigir el cumplimiento de la contraprestación ni retener el dinero recibido. Concurrimos con dicha determinación. *Veamos.*

Del expediente ante nuestra consideración surge que, el 14 de septiembre de 2021, las partes otorgaron un contrato de opción de compraventa mediante el cual la señora Chaitin adquiriría la propiedad de los esposos Staudinger Chévere, quienes operaban en ella un negocio de alquiler a corto plazo (*AirBnB*). Como parte del acuerdo, la compradora debía entregar un depósito de $175,000.00, cantidad que sería descontada del precio final de compraventa.

La cláusula número siete (7) del contrato disponía que la señora Chaitin contaba con un término de cuarenta y cinco (45) días, a partir del otorgamiento del contrato, para ejercer la opción de compra. Este término podía extenderse por treinta (30) días adicionales, siempre que existiera justa causa y acuerdo entre las partes. Por tanto, el término original vencía el 29 de octubre de 2021, y podía prorrogarse hasta el 29 de noviembre de ese mismo año.

A su vez, la cláusula número tres (3) establecía lo siguiente:

> If buyer is ready, willing and able to execute the sales deed and other closing documents, but if Seller does not execute the deed of sale, Buyer shall have the right to specific performance of this contract, and at their option,

may cancel this contract and receive the earnest money in total.

En otras palabras, si la parte vendedora no otorgaba la escritura estando la compradora lista y en disposición de hacerlo, esta tenía derecho a exigir el cumplimiento específico del contrato o, en su defecto, resolverlo y recibir la devolución íntegra del depósito.

Por otro lado, la cláusula número nueve (9) indicaba que: "If the transaction is not completed within the term of this contract for reasons attributable to THE BUYER, the Buyer agrees to forfeit the money given as an option". Esto implicaba que, si la transacción no se completaba dentro del término acordado por razones atribuibles a la señora Chaitin, la parte vendedora tenía derecho a retener el depósito.

De igual forma, la cláusula número cinco (5) establecía:

[t]he property will be free and clear of any liens such as back taxes, mortgages, or any other debt relative to the property upon transfer of ownership. THE Seller will transfer good, legal, insurable and recordable and marketable title to the property. All costs and expenses relating to the cancellation of any and all liens encumbering the property shall be borne by the Seller.

En esencia, el contrato imponía la obligación a los vendedores de entregar la propiedad libre de cargas o gravámenes y asumir los costos para cancelar cualquier limitación registral.

Del expediente también se desprende que, como parte de las diligencias para completar la compraventa, la señora Chaitin ordenó un estudio de título el 24 de septiembre de 2021. En dicho estudio se reveló una condición restrictiva que destinaba la finca a uso exclusivamente residencial. Según el documento:

CONDICIONES RESTRICTIVAS: Edificación y Uso. La Compradora, sus herederos o sucesores, solo podrán construir sobre el solar adquirido una sola casa para residencia de familia y a una distancia de no menos de 2 metros de distancia del frente del solar. Que en el solar no podrá construirse ranchones, garage público, estacionar o guardar vehículos de motor, ni establecer negocio de cualquier índole que no sea la construcción de una casa para residencia de familia. No se permitirá la extracción de arena para fines comerciales o fuera de la parcela enajenada a menos que la extracción de dicha arena sea para la construcción de las casas en los solares que comprenda la parcela.

Posteriormente, el 8 de octubre de 2021, las partes firmaron un *Closing Term Extension Addendum*, extendiendo el plazo para ejercer la opción de compra hasta el 30 de octubre de 2021, por lo que el contrato de opción expiraría el 30 de noviembre de 2021. Mientras, el 24 de noviembre de 2021, la Lcda. Ethel Santisteban remitió a la señora Chaitin una opinión legal escrita sobre la situación. En dicho documento expresó, entre otras cosas:

[...]

At all times, I have kept you informed and updated of all issues that have happened and assessed all possible options for you to purchase the properly with minimum risks to your investment and to preserve your intention of buying an income property to build a second floor, expand the existing multi family unit into five separate apartments and to continue with the operating income property in order for you to make an informed decision with all facts in place.

As you are aware, the moment I received from the Sellers attorney the draft deed, and the complementary documents, especially the title search, I immediately highlighted the concerns of the severe restrictive conditions existing upon the property that you were not aware of and/or notified at any moment during the initial negotiations despite the fact that such conditions are on the Sellers deed and the Realtor and Sellers knew of your intentions towards buying the property.

On October 27, 2021, I sent an email to the Sellers attorney stressing the importance and the concerns regarding the existing restrictive conditions. In addition, I requested some specific documentation, some of which the produced like evidence of paying the Room tax as required by Tourism Company and others they have not like the building permits used to expand the single residence into a multi-unit family and the authorization to operate a business on the property in compliance with the existing zoning requirements.

We went back and forth between the parties, meaning the Realtor, the sellers attorney and myself since the option to buy agreement was expiring on October 31, 2021. On the last date to sign the extension of the agreement, after discussing with the Realtor, the specific concern regarding the existing restrictive conditions, I proposed an additional language, which was accepted by the Realtor, and it is as follows: "Subject to the resolution and clarification of the current restrictive conditions of Building and Use that are imposed on the property as per title search performed by Luis Reyes Vázquez, LLC on September 24, 2021".

Subsequently, on that same day, you signed the extension with the added language within the valid period to extend the option to buy agreement and sent to the Realtor for the Sellers to sign it.

Afterward, we were informed through the Realtor and sellers attorney that the Sellers refused to sign the added language regarding restrictive conditions. Despite this fact, we continued negotiating in good faith with the Sellers attorney and Realtor due to your interest in the property and because the Realtor advised us that original option agreement has language regarding the transfer of a clean title, and he acknowledged that restrictive conditions mean that there are problems with the title, since it is encumbered and not free. Therefore, days later and again acting in good faith, you proceeded to sign the extension of the option to buy agreement without the proposed additional language, since this was the only way that the Sellers will sign the extension to the Agreement until November 30,2021.

An investigation was done by the sellers attorney who visited the Property Registry and inquired about the existing restrictive upon the property. I also did my own research. The restrictive conditions are dated from the 1950s and have no expiration date, therefore, it means that they are there indefinitely affecting present and future owners of the property. At the same time unless someone presents a claim or a lawsuit those restrictive conditions are not going to be removed. The Property Register of Carolina informed the sellers attorney through their supervisor Katherine that the restrictive conditions will not be cancelled unless a sentence from the court was presented ordering them to do so.

[…]

For your best interest, it is my duty to recommend you to please read this letter carefully and if in agreement reply to me in writing authorizing me to proceed as follows:

1. To send a letter today to the sellers attorney and the realtor immediately notifying them of our intention to reiterate our initial position presented regarding our valid concerns of the restrictive conditions and ask them to provide us a clean title free of encumbrances, specially in light of the new ruling on the case, which clearly shows how the purchase of the property with the existing risk of the restrictive conditions defeats the purpose and intention of why you are acquiring the property, I will give them two options.

2. Option #1: Will request them to extend the contract until the existing title can be free of any encumbrances and that a study has to be made and present a case to the court to verity if the property meets all criteria previously defined by the court to eliminate the conditions. We are willing to participate in this process as an interest party.

3. Option #2: If they do not want to extend the contract until the restrictive conditions are evaluated, assessed and resolved in the corresponding legal forum, then will ask to rescind the contract and for the option deposited money of $175,000 to be returned to you immediately since the contract terms cannot be fulfilled.

La opinión legal evidencia que la compradora desconocía la existencia de tales restricciones al momento de negociar el contrato y que, al conocerlas, intentó incluir lenguaje adicional en la prórroga del contrato para dejar constancia de que la extensión estaba sujeta a la resolución de dichas restricciones. Aunque inicialmente el corredor accedió, los vendedores se negaron a firmar dicha versión con el nuevo lenguaje. Aun así, motivada por su interés en la propiedad y confiando en la buena fe de las partes, la señora Chaitin firmó la extensión sin el lenguaje añadido, extendiendo el contrato hasta el 30 de noviembre de 2021.

En el mismo escrito, la Lcda. Santisteban señaló que el registrador de la propiedad indicó que las condiciones restrictivas no serían eliminadas a menos que un tribunal emitiera una sentencia ordenando su cancelación. En vista de ello, recomendó formalmente a su clienta enviar una comunicación a los vendedores notificando su posición y solicitando, como alternativas: (1) la extensión del contrato mientras se resolvían las restricciones en los tribunales, o (2) la resolución del contrato y la devolución del depósito de $175,000.00.

Del expediente también surge que la señora Chaitin se comunicó con la parte apelante una vez recibió el estudio de título, a fin de notificarles que la propiedad no podía ser utilizada como negocio de alquiler a corto plazo debido a la condición restrictiva. Expresó que para adquirir la propiedad necesitaba que dicha limitación fuera eliminada, pues su intención era continuar con la operación del negocio tipo Airbnb. Incluso ofreció su colaboración para gestionar la modificación de las condiciones restrictivas y viabilizar así la compraventa.

Finalmente, el 30 de noviembre de 2021, las partes suscribieron un *Second Sale Extension Agreement*, extendiendo la fecha de expiración del contrato hasta el 4 de enero de 2022. Cabe señalar que, durante la vista celebrada el 23 de septiembre de 2024, las partes

estipularon que los esposos Staudinger Chévere se habían apropiado del depósito de $175,000.00 entregado por la señora Chaitin.

Es norma reiterada en nuestro ordenamiento que el contrato es un acto jurídico bilateral mediante el cual las partes expresan su consentimiento para crear, modificar, extinguir o regular obligaciones. Artículo 1230 del Código Civil de 2020, *supra*. Mediante un contrato, las partes tienen libertad para pactar cualquier estipulación, siempre que no contravenga la ley, la moral o el orden público. Artículo 1232 del Código Civil de 2020, *supra*. Una vez perfeccionado el contrato, sus disposiciones tienen fuerza de ley entre las partes contratantes. Artículo 1233 del Código Civil de 2020, *supra*. Por lo tanto, los tribunales no pueden eximir a una parte de cumplir con un contrato válido y legal que no adolece de vicios. *Mercado, Quilichini v. U.C.P.R.*, supra, pág. 627.

Asimismo, en materia contractual rige el principio de que, cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de las partes, no procede aplicar normas de interpretación. Art. 354 del Código Civil de 2020, *supra*. Se consideran claros aquellos términos que pueden ser comprendidos en un único sentido, sin ambigüedades ni necesidad de recurrir a razonamientos complejos. *S.L.G. Francis-Acevedo v. SIMED*, supra, pág. 387. En consecuencia, cuando no existe ambigüedad, las cláusulas pactadas obligan a las partes contratantes. Íd.

Cabe precisar que, el contrato de opción ante nuestra consideración era claro al establecer que el inmueble tenía que ser transferido libre de gravámenes y, que la parte apelante era responsable de cancelar cualquier gravamen de la propiedad. Asimismo, dicho contrato expresaba las circunstancias para solicitar el cumplimiento y la resolución del contrato y, las formas para recibir la devolución del depósito. Es decir, en el caso ante nos, los vendedores, los esposos Staudinger Chévere, estaban obligados a entregar la propiedad libre de gravámenes a la compradora, la señora Chaitin.

Además, el contrato era claro, al disponer que, si la parte apelante no otorgaba la escritura de compraventa estando la apelada lista, dispuesta y apta para hacerlo, esta tendría el derecho de exigir el cumplimiento específico del contrato o resolverlo y recibir la devolución del depósito pagado.

De otra parte, nos parece meritorio aclarar que, las restricciones voluntarias de carácter real son aquellas limitaciones de uso y construcción que se imponen a las fincas. Art. 813 del Código Civil de 2020, *supra*. Es decir, el conocimiento de las limitaciones y condiciones impuestas en virtud de las restricciones voluntarias se imputa a todo presente y futuro adquirente de la propiedad que éstas gravan. *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, págs. 327-328. Por lo que, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones". *Asoc. de Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 536. Así pues, el propietario o el titular de un derecho real que recae sobre una finca gravada con alguna restricción voluntaria, pueden solicitar al tribunal competente que declare su modificación o extinción. Art. 819 del Código Civil de 2020, *supra*. Cónsono con lo anterior, es forzoso concluir que la parte apelante conocía o debió conocer dicha condición restrictiva y, por consiguiente, estaba obligada a eliminar la condición restrictiva para poder llevar a cabo el contrato de opción.

Nótese que, una vez la apelada adviene en conocimiento de que la propiedad inmueble tenía una condición restrictiva la cual únicamente permitía construir sobre el solar una sola casa para residencia de familia y, que no se podía establecer un negocio, se comunicó con la parte apelante y, les notificó que la propiedad no podía ser utilizada para negocio de alquiler a corto a plazo. Sin embargo, enfatizó que estaba dispuesta a realizar gestiones dirigidas a eliminar las condiciones restrictivas. Particularmente, expresó que podía ayudar

económicamente para eliminar dicha condición restrictiva, toda vez que estaba interesada en comprar la propiedad para continuar y expandir el negocio de alquiler a corto plazo.

Por el contrario, del expediente ante nuestra consideración no surge que la parte apelante realizara gestiones dirigidas a eliminar la condición restrictiva y, así cumplir con el contrato de opción. Del legajo apelativo, únicamente surge que, el representante legal de los esposos Staudinger Chévere acudió al Registro de la Propiedad a los fines de indagar respecto a la condición restrictiva. Allí, le notificaron que dicha condición restrictiva estaba vigente y, que no había sido eliminada. Por otra parte, como parte de su *Contestación a Demanda*, arguyeron que la propiedad tenía una clasificación que permitía operar la propiedad como negocio de alquiler a corto plazo. No obstante, del expediente ante nos, no surge ningún documento al respecto.

Por otra parte, los esposos Staudinger Chévere, alegaron que, desconocían de dicha condición restrictiva. De las determinaciones de hechos que realizó el TPI, concluyó que la parte apelante adquirió la propiedad de una institución bancaria y que no se percataron de dicha condición restrictiva. No obstante, dicho desconocimiento no lo consideramos justa causa para no cumplir con el contrato, toda vez que fueron informados por la señora Chaitin y, nunca realizaron gestiones conducentes a eliminar la condición restrictiva. Así pues, consideramos que la falta de gestiones por parte de los esposos Staudinger Chévere fue un acto intencional para no llevar a cabo la compraventa del inmueble y, por consiguiente, retener el depósito de $175,000.00. Ello, en contravención a lo pactado en el contrato de opción de compraventa. Por último, es meritorio señalar que, las partes otorgaron dos (2) extensiones al contrato de opción, por lo que la parte apelante tuvo tiempo adicional para realizar las gestiones necesarias y eliminar la condición restrictiva. No lo hizo. Por ello, determinamos que los esposos Staudinger Chévere no tenían una causa justificada para no cumplir con el contrato según pactado.

Reiteramos que, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230, *supra*. Así pues, la parte apelante estaba obligada a cumplir con su parte del trato, para poder retener dicho depósito. Cónsono con lo anterior, resolvemos que el TPI no actuó mediando prejuicio, parcialidad, e incurriendo en craso abuso de discreción. Tampoco dictó una sentencia inconsistente y contradictoria, pues dicho dictamen reflejó la totalidad de la evidencia sometida ante su consideración. Por ello, resolvemos que procede devolver el depósito de $175,000.00 a la señora Chaitin, por lo que el primer y tercer señalamiento de error no se cometieron.

Respecto al segundo señalamiento de error, los esposos Staudinger Chévere argumentaron que el TPI incidió al atribuirle entera responsabilidad sin tomar en consideración las actuaciones de la señora Chaitin en contra de sus propios actos, lo que contribuyó al fracaso de la transacción. Según el derecho previamente expuesto, una instancia que constituye un detrimento al principio general de buena fe es ir en contra de los actos propios. Es decir, la doctrina de actos propios procura que las personas no vayan en contra de sus actos, y que actúen de buena fe en el ejercicio de sus derechos y en el cumplimiento de las obligaciones en las que incurran en variadas relaciones jurídicas. *Vivoni Farage v. Ortiz Carro*, supra, pág. 1010. Así pues, el propósito de esta doctrina es "proteger la confianza depositada en la apariencia, que es, por extensión, la protección de un interés social o la consecución de un ideal de justicia". *Aponte Valentín v. Pfizer Pharmaceuticals*, LLC, supra, pág. 287. En vista de lo anterior, un litigante está impedido de adoptar una actitud que sea contradictoria con una conducta anterior, sobre la cual la parte perjudicada ha confiado, y ello sin importar la verdadera intención de la parte que genera esa confianza. *Pardo v. Sucs. Stella*, supra, pág. 829.

Tras un estudio del expediente ante nuestra consideración y de las determinaciones de hechos que realizó el TPI, concluimos que en el

presente caso quienes actuaron de mala fe y adoptaron una conducta contradictoria en contra de sus propios actos fueron los esposos Staudinger Chévere. Ello, toda vez que retuvieron el depósito de $175,000.00 sin cumplir con sus obligaciones en el contrato de opción. Nótese que, la cláusula número trece (13) del contrato de opción indicaba lo siguiente: *"Buyer and Seller acknowledge that they are required to make a good faith effort to satisfy all terms of the Agreement and that a failure to do so may be deemed a breach of the Agreement"*. Entiéndase, el contrato requería que las partes actuaran de buena fe al intentar cumplir con sus términos y condiciones y que el no hacerlo podría considerarse un incumplimiento con el contrato. De igual forma, la parte apelante otorgó el contrato objeto de esta controversia y se comprometió a entregar la propiedad libre de gravámenes.

Reiteramos que, la parte apelante, no realizó las gestiones necesarias para eliminar dicha condición, y así, poder vender la propiedad libre de cargas. Mientras que, la apelada expresó desde el inicio de la contratación que su propósito era continuar operando el negocio a corto plazo y expandir la propiedad, por lo que dicha condición restrictiva frustraba la intención del contrato. Además, cabe mencionar que, esta se ofreció a ayudar a las partes a realizar los trámites necesarios para eliminar la condición restrictiva. Dicho esto, la parte apelante no podía ir en contra de sus propios actos y librarse de cumplir con la confianza que le brindó la señora Chaitin de que se le estaría devolviendo el depósito en la eventualidad que de por culpa de estos no se lograra llevar a cabo el contrato de opción de compraventa.  Por ello, determinamos que la parte apelante actuó de mala fe y en contra de sus propios actos, lo que frustró la contratación entre las partes. Por tanto, colegimos que el segundo señalamiento de error no se cometió.

Por último, en cuanto al cuarto señalamiento de error, los esposos Staudinger Chévere plantean que el TPI incidió al determinar que no tenían evidencia alguna para probar sus alegaciones y, concluir

que actuaron de forma temeraria. Según el derecho que antecede, la Regla 44.1(d) de Procedimiento Civil, *supra*, establece que "[e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. […]" Cabe precisar que, la evaluación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y sólo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. *PR Fast Ferries et al. v. AAPP,* supra, pág.115.

En el caso que nos ocupa, no le asiste la razón a la parte apelante al argumentar que el TPI incidió al determinar que actuó en forma temeraria y, en consecuencia, imponerle $10,000.00 en honorarios de abogado. Cabe precisar que, estos llevaron a la señora Chaitin a litigar el pleito por casi dos (2) años, a pesar de que las cláusulas del contrato eran claras y, disponían que estos tenían que devolver el depósito si incumplían con el contrato de opción de compra. Además, la parte apelante en su recurso no demostró que el TPI haya abusado de su facultad discrecional. Ante ello, no encontramos razón para intervenir con la determinación de temeridad. Por tanto, concluimos que el cuarto señalamiento de error no se cometió.

Debemos recordar que, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. *RAD-MAN San Juan III-D, LLC,* supra, pág. 338. Lo anterior, como norma general, prohíbe que un tribunal apelativo sustituya las determinaciones de hechos de un foro inferior. Íd. Por lo tanto, los foros revisores no debemos intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. Íd. Así pues, no debemos de intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie

error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción.

Por tanto, evaluado el expediente ante nuestra consideración, el derecho aplicable y la transcripción de la prueba oral, no encontramos que dicho foro haya errado en sus conclusiones de derecho. Así pues, concluimos que tanto las determinaciones de hechos como las conclusiones de derecho del TPI estuvieron basadas en la prueba documental y de conformidad al derecho aplicable por lo que debemos sostener sus determinaciones. Máxime, cuando no encontramos en las actuaciones de dicho foro la existencia de pasión, prejuicio, parcialidad o error manifiesto. De este modo, no se cometió el primero ni el segundo señalamiento de error.

IV.

Por los fundamentos expuestos, **confirmamos** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones